UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,        )
                                 )
         v.                      )
                                 ) Criminal Action No. 84-73 (RWR)
WILLIE L. STEWART, JR.,          )
                                 )
         Defendant.              )
_____ )

## MEMORANDUM OPINION

Pro se defendant Willie Stewart contends that a warrant issued by the United States Parole Commission ("Commission") on September 11, 2012, for an alleged violation of his special parole conditions is invalid because he claims the warrant was issued after he had completed his underlying sentence. He seeks a writ of mandamus directing the Commission to provide him with a prompt hearing on the alleged violation and a writ of habeas corpus freeing him from any confinement ordered after such a hearing since the confinement would stem from what he contends was an illegally issued warrant. Because the special parole violation warrant was lawfully issued before Stewart's sentence expired in his underlying criminal case, and because Stewart did not have a due process right to a revocation hearing before the special parole warrant was executed, Stewart's petition will be denied.

BACKGROUND

On June 22, 1984, Judge Joyce Hens Green sentenced Stewart to one year of imprisonment for carrying a pistol without a license, in violation of 22 D.C. Code § 3204, two to six years of imprisonment for possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a), and a special parole term of three years to follow his imprisonment, with those sentences to run concurrently to each other and consecutively to any other sentence. See Govt.'s Oppn. to Def.'s Pet. for a Writ of Mandamus ("Govt.'s Oppn."), ECF No. 5, Ex. A, J. & Commitment Order at 1.

At that time, 21 U.S.C. § 841(a)[1] required that the sentencing judge impose a mandatory term of three years of special parole. See United States v. Brundage, 903 F.2d 837, 839 (D.C. Cir. 1990) (discussing the history of sentencing provisions under 21 U.S.C. § 841). "Special parole was 'a period of supervision served upon completion of a prison term' and administered by the United States Parole Commission." Gozlon-Peretz v. United States, 498 U.S. 395, 399 (1991)

---

[1] At the time of Stewart's 1984 sentencing, 21 U.S.C. § 841(c) stated that "[a] special parole term provided for in this section or section 845 or 845a of this title shall be in addition to, and not in lieu of, any other parole provided for by law." 21 U.S.C. § 841(c), repealed by Act of Oct. 12, 1984, Pub. L. No. 98-473, § 224(a)(6), 48 Stat. 1837, 2030 (1984).

(quoting Bifulco v. United States, 447 U.S. 381, 388 (1980)). The special parole term was "designed to take effect upon the expiration of the period of parole supervision following mandatory release, or at the full term date following parole, or upon release from confinement following sentence expiration." United States v. Watson, 548 F.2d 1058, 1060 n.3 (D.C. Cir. 1977) (quoting Roberts v. United States, 491 F.2d 1236, 1238 (3d Cir. 1974)).

Stewart was paroled in this case on June 18, 1990, and his parole was scheduled to last until June 16, 1994. See Govt.'s Oppn., Ex. B, Certificate of Parole at 1. During this period of parole, Stewart was convicted in Virginia of robbery, possession of a firearm by an individual convicted of a felony, and use of a firearm in the commission of a felony. See id., Ex. C, Order for the Circuit Ct. for Fauquier County, Commonwealth of Va. at 1-2. For these offenses, Stewart was sentenced on August 3, 1993 to an aggregate maximum term of 27 years of imprisonment, followed by a five-year term of supervision. See id. at 3. After Stewart completed the sentence for his Virginia offenses, the Commission revoked Stewart's parole in this case on March 13, 2007. See id., Ex. D, 3/13/07 Notice of Action at 1-2.

On May 14, 2009, Stewart was released from prison and began serving a mandatory release supervision period in this case.

See id., Ex. E, Bureau of Prison Sentence Monitoring Computation Data at 13. Stewart's mandatory release supervision period ended on March 21, 2010, id. at 17, and his three-year term of special parole imposed in this case began without any credit for time previously spent on parole. See id. That term of special parole was scheduled to expire on March 22, 2013. See id., Ex. G, Warrant and Warrant Application at 4.

In September 2012, Stewart was convicted in D.C. Superior Court of possession with intent to distribute cocaine. See id., Ex. G-1, J. in Crim. Case; Ex. G at 1, 4; Ex. E at 3. He was sentenced on September 10, 2012 to a term of 28 months of imprisonment, followed by a term of supervised release of five years. See id., Ex. E at 3-4; Ex. G-1. Following Stewart's sentencing in D.C. Superior Court on September 10, 2012, the Commission issued a special parole violation warrant on September 11, 2012 to be lodged as a detainer against Stewart and to be executed upon the completion of his D.C. Superior Court sentence. See id., Ex. G at 1, 5. Stewart filed the instant petition on July 29, 2014, just before the Commission executed the special parole violation warrant on September 19, 2014, when Stewart completed his D.C. Superior Court prison term. See id., Ex. G at 2, Ex. E at 5. The Commission then notified Stewart that it had found probable cause to believe that he had violated the conditions of his special parole in

this case due to his D.C. Superior Court conviction for possession with intent to distribute cocaine. See id., Ex. I, Letter from Bureau of Prisons, dated October 7, 2014, at 1. The Commission held a hearing on November 5, 2014, revoked his special parole in this case, and sentenced him to 32 months in prison. See 11/5/14 Notice of Action at 1. Stewart served time in prison from November 5, 2014 until May 8, 2015.[2] On May 9, 2015, he began serving the term of supervised release that was imposed by the Superior Court in 2012. That term is scheduled to end May 7, 2018.[3]

Stewart asserts that the Parole Commission issued a parole violation warrant after he had completed his parole term when the Commission had no further authority over him. He complains that the warrant, lodged as a detainer in North Carolina where he was incarcerated on other charges at the time he filed his motion, is therefore an illegal detainer. He frames his request for relief as both a request for a writ of habeas corpus to free him from the restraints of the illegal detainer, and a request for a writ of mandamus directing the Commission to grant him the

---

[2] Stewart served less than the entire 32 months because he was given credit for time served for his D.C. Superior Court sentence. See 11/5/14 Notice of Action at 1.

[3] Stewart was not given credit for any time previously spent on special parole. See 11/5/14 Notice of Action at 1.

parole hearing he has been seeking in which he can challenge the parole violation warrant.[4]

## DISCUSSION

I.   SUBJECT MATTER JURISDICTION

A court has an independent obligation to satisfy itself of its subject matter jurisdiction in any litigation.  A habeas petition is certainly the kind of matter that a district court has the power to entertain.  See 28 U.S.C. § 2241(a).  But the two bases upon which Stewart asserts that subject matter jurisdiction lies in this Court over his habeas claim sound more in issues of venue and personal jurisdiction: 1) any future detention resulting from a parole violation finding in this case would occur in this district, and 2) the warrant was issued in this district by the Commission which is located here.

An inmate may seek habeas to challenge a detainer lodged against him by an authority that would be his future custodian should the detainer be honored.  See Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 488-89, 500-01 (1973).  Even if subject matter jurisdiction to entertain a habeas petition is

---

4  Because Stewart is proceeding pro se, his petition will be liberally construed in order to accurately capture the nature of the legal relief that he seeks.  See e.g., Brown v. Dist. of Columbia, 514 F.3d 1279, 1283 (D.C. Cir. 2008) ("'[A] document filed pro se is to be liberally construed . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

present only when the court has personal jurisdiction over the custodian of the petitioner, see Guerra v. Meese, 786 F.2d 414, 415 (D.C. Cir. 1986) (citing Braden, 410 U.S. at 495), the Commission is a proper custodian here since the Commission is the authority that issued the detainer that brought Stewart into immediate custody after he finished serving his recent prison term. See Braden, 410 U.S. at 498-99. This Court could have personal jurisdiction over the Commission since the Commission is located in this district, and the United States does not contest -- thus waives -- this Court's personal jurisdiction over the Commission concerning the habeas claim. See Fed. R. Civ. P. 12(h)(1); Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).

The government ultimately does not challenge this Court's subject matter jurisdiction over the habeas claim. This Court is also satisfied that it has subject matter jurisdiction over the habeas claim in this case. But what is ultimately dispositive of the petition here is that Stewart's claim that the detainer is illegal has no merit and affords him no basis for achieving the relief he seeks, whatever the terms he uses for framing the relief sought.

II. UNTIMELY DETAINER

Stewart contends that he had already completed his sentence in this case at the time the Commission lodged a detainer

against him.  Pet. at 1.  The government opposes Stewart's claim, arguing that the warrant was issued before Stewart's term of special parole in this case expired.  Govt.'s Oppn. at 6-8.

At the time the special parole violation warrant was issued in September 2012, Stewart's sentence in this case had not yet ended.  Stewart's mandatory release supervision period ended on March 21, 2010.  See Ex. E at 17.  Stewart's three-year special parole term began on March 22, 2010, and was scheduled to end on March 22, 2013.  See Ex. F.  Thus, Stewart's sentence in this case had not yet ended when the Commission issued the special parole violation warrant on September 10, 2012.

The fact that the special parole violation warrant was executed after the scheduled end of Stewart's term of special parole in 2013 does not render the warrant invalid.  The Parole Commission had the legal authority to revoke a term of special parole provided that the special parole violation warrant was issued before the end of Stewart's federal sentence.  See 28 C.F.R. § 2.98(e) ("The issuance of a warrant under this section operates to bar the expiration of the parolee's sentence.  Such warrant maintains the Commission's jurisdiction to retake the parolee either before or after the normal expiration date of the sentence and to reach a final decision as to the revocation of parole"); see also Bethea v. U.S. Parole Comm'n, 751 F. Supp. 2d 83, 87 (D.D.C. 2010) ("[I]ssuance of the warrant tolls the

running of the sentence[.]" (citation omitted)); <u>Owens v. Gaines</u>, 219 F. Supp. 2d 94, 100-01 (D.D.C. 2002) (same). Therefore, the warrant issued by the Commission on September 11, 2012 was valid.

III. UNTIMELY HEARING

Stewart also contends that he was denied his right to a timely revocation hearing. Pet. at 3. In opposition, the government argues that the Commission's special parole violation warrant was lodged as a detainer and because the warrant had not yet been executed when he filed this petition, Stewart did not yet have a due process right to a revocation hearing. Govt.'s Oppn. at 9.

A parolee is entitled to a revocation hearing only after a violation warrant is executed, and not at the point when a warrant is issued. See <u>Moody v. Daggett</u>, 429 U.S. 78, 89 (1976) ("[The petitioner] has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant. The Commission therefore has no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant."); <u>Munn Bey v. U.S. Parole Comm'n</u>, 824 F. Supp. 2d 144, 146 (D.D.C. 2011) ("Hence, the right to a revocation hearing within a reasonable time is only triggered after the parole violator warrant is <u>executed</u>, not when it is lodged, and when

the defendant is taken into custody under that warrant, not any other criminal warrant." (citation omitted)).  As the Supreme Court stated in Moody,

> [The] execution of the warrant and custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation.  This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.

Moody, 429 U.S. at 87 (citations omitted).  Detention following the warrant's execution is what implicates the defendant's protected liberty interest under the Due Process Clause.  The right to a revocation hearing is triggered only after the warrant is executed.

Similarly, there is no requirement that the Commission execute a parole warrant before a defendant completes an intervening sentence.  The Commission may lodge a detainer against a defendant and wait until after the defendant completes the intervening sentence to execute the warrant.  See, e.g., 28 C.F.R. § 2.47(a) ("When a parolee is serving a new sentence in a federal, state or local institution, a parole violation warrant may be placed against him as a detainer."); see also Ramsey v. Reilly, 613 F. Supp. 2d 6, 11 (D.D.C. 2009) ("If a parolee is convicted of another crime while on parole and then sentenced to prison, due process does not require that a parole violator warrant be executed or that a parole revocation hearing

be conducted until after the expiration of the new sentence." (citation omitted); <u>Brooks v. U.S. Parole Comm'n</u>, 510 F. Supp. 2d 104, 105 (D.D.C. 2007) ("[The Commission] has no obligation to execute the warrant until petitioner completes his intervening sentence." (citations omitted)); <u>Lyons v. CCA/Corr. Treatment Facility</u>, Civil Action No. 06-2008 (GK), 2007 WL 2007501, at *2 (D.D.C. July 10, 2007) ("It is not a violation of a parolee's due process rights to lodge a parole violator warrant as a detainer and execute the warrant only after the new sentence is completed." (citations omitted)).  Therefore, Stewart did not have a due process right to a revocation hearing before the warrant's execution.[5]  In any event, the Commission did hold an institutional revocation hearing in this matter on November 5, 2014, a date shortly after the warrant was executed. <u>See</u> 28 C.F.R. § 2.49(f) ("Institutional revocation hearings shall be scheduled to be held within ninety days of the date of the execution of the violator warrant upon which the parolee was retaken.").

---

[5]  A lengthy sentence that intervenes before a parole warrant is executed raises concerns expressed before by Chief Justice Earl Warren that postponed adjudication of claims can risk "dimmed memories or the death of witnesses [which] is bound to render it difficult or impossible to secure crucial testimony on disputed issues of fact." <u>Peyton v. Rowe</u>, 391 U.S. 54, 61-62 (1968).  Those concerns are not lost on this Court.

CONCLUSION

There is no basis for finding that the Commission's special parole violation warrant was issued unlawfully. Stewart neither established any right to a revocation hearing before the warrant was executed nor showed any unreasonable delay by the Commission when it conducted the hearing after the warrant was executed. Thus, Stewart's petition is without merit, and his petition will be denied. An appropriate final order accompanies this memorandum opinion.

SIGNED this 11th day of December, 2015.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge